## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>               v.<br><br>ANINDER JAWANDA and LARISSA SPEARS, *individually and as the parent of Ben Jawanda, deceased child,*<br><br>    Defendants. | Civil Action No.<br>1:22-cv-04719-SDG |

## <u>OPINION AND ORDER</u>

This matter is before the Court on its jurisdictional Order to Show Cause [ECF 26], Plaintiff Allstate Vehicle and Property Insurance Co.'s response thereto [ECF 30], and Allstate's motion to amend the scheduling order and add a party [ECF 24]. The Court concludes that it may properly exercise subject matter jurisdiction over this action and that Allstate's motion to amend should be granted. As a result, Allstate's pending motion for summary judgment [ECF 22] is denied without prejudice and Defendant Aninder Jawanda's motion for leave to file a surreply [ECF 34] is denied as moot.

## I.   Background

The parties' disputes stem from the tragic death of four-year-old Ben Jawanda.[1] At the time of his death, Ben and his mother (Defendant Larissa Spears) lived at a home owned by Ben's grandmother (Defendant Aninder Jawanda).[2] The home was covered by an insurance policy issued by Allstate (the Policy).[3] Aninder, Spears, and Ben's father (Rana Jawanda) were all named insureds.[4]

On October 2, 2021, Ben went missing and Spears eventually found his body in the home's pool.[5] Soon thereafter, Aninder initiated a dispossessory action against Spears in the Magistrate Court of Fulton County, Georgia.[6] Spears—in her individual capacity and as Ben's parent—filed a counterclaim against Aninder in connection with Ben's injury and death.[7] The Magistrate Court ultimately dismissed Spears's counterclaim without prejudice.[8] Spears then refiled wrongful

---

[1]   Although the Court's description of the facts is based on the allegations in the Complaint and Allstate's motion to amend, the parties do not appear to dispute the essential details. They remain free to contest these facts in any dispositive motions.

[2]   ECF 1, ¶¶ 9–10.

[3]   ECF 1-1 (Policy).

[4]   *Id.* at 6.

[5]   ECF 1, ¶¶ 12–13.

[6]   *Id.* ¶ 14.

[7]   *Id.* ¶ 15.

[8]   ECF 24-1, at 2.

death claims in Fulton County Superior Court, this time naming both Aninder and Rana as defendants.[9] This is the Underlying Litigation.[10]

In this action—which was initiated after the Magistrate Court's dismissal of Spear's counterclaim but before Spears refiled—Allstate seeks a declaration that it is not obligated to provide coverage, indemnification, or a defense in the Underlying Litigation to Aninder. Allstate now moves to add Rana as a Defendant, seeking the same declaration as to him. Because the deadline for filing amendments to the pleadings has passed, Allstate also requests that the Court amend the scheduling order.

## II.    Jurisdiction

Allstate presses its claim under the Declaratory Judgment Act (the DJA). Since the DJA itself does not create federal jurisdiction, *Household Bank v. JFS Grp.*, 320 F.3d 1249, 1253 (11th Cir. 2003), Allstate relies on diversity of citizenship as the basis for this Court's jurisdiction.[11] On July 18, 2023, the Court directed Allstate to show cause why subject matter jurisdiction exists given that the amount in controversy appeared insufficient under recent Eleventh Circuit case law.[12]

---

9    ECF 24-2.

10   *Spears v. Jawanda*, Case No. 2023CV380721 (Fulton Cnty. Ga. Super. Ct.).

11   ECF 1, ¶¶ 4–5.

12   ECF 26.

Allstate responded, asserting not only that the policy limits plus defense costs satisfy the amount in controversy, but also that the Court should decline to follow case law indicating otherwise because it conflicts with long-standing precedent.[13]

The operative question is now whether the amount in controversy can be met in a declaratory judgment action concerning insurance coverage when liability on the underlying claim has not yet been established. As it turns out, the Eleventh Circuit's cases do not provide a consistent answer. Demonstrating the analytical difficulties caused by the conflicting case law, in just the past decade, different panels of the Eleventh Circuit have held that (1) a declaratory judgment action concerning a duty to indemnify is not ripe if the underlying liability has not been established so the amount in controversy is zero, *Sullivan v. Everett Cash Mut. Ins. Co.*, No. 19-11943, 2023 WL 1521579, at *4 (11th Cir. Feb. 3, 2023) (per curiam); *and* (2) the amount in controversy is satisfied in a duty-to-indemnify case because the value of the case from the underlying plaintiff's perspective was the "amount of *potential* liability" under the insurance policy, *First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 F. App'x 861, 865 (11th Cir. 2016) (per curiam).

The Court therefore believes it appropriate to tackle the case law in depth so that the basis for its exercise of jurisdiction is clear. This requires reviewing the

---

[13]   ECF 30.

related, but distinct, concepts of ripeness, amount in controversy, and the prudential considerations that arise when a cause of action is predicated on the DJA—something the Order to Show Cause did not sufficiently address. The Court concludes that, while it is not required to exercise jurisdiction in all DJA cases involving insurance coverage with policy limits in excess of the amount in controversy, it may (and should) exercise such jurisdiction here.

A.     **Ripeness**

The Constitution governs federal courts' authority, limiting them to considering "cases" and "controversies." U.S. CONST. art. III, § 2; *see, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992*); Granite State Outdoor Adver., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir. 2003). Federal courts cannot adjudicate a matter where it is only speculative that the plaintiff will suffer an injury; that is, federal courts cannot consider disputes that are not ripe. Determining whether a matter is ripe involves both constitutional (*i.e.*, jurisdictional) and prudential concerns. *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997); *Johnson v. Sikes,* 730 F.2d 644, 648 (11th Cir. 1984).[14] To determine whether a dispute is ripe, courts look to "whether there is sufficient injury to meet Article III's requirement of a case or controversy and, if so, whether the claim is sufficiently mature, and the issues sufficiently defined and

---

[14]    The prudential issues related to ripeness are discussed *infra* Section II.C.

concrete, to permit effective decisionmaking by the court." *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995).

### 1. The Supreme Court's Rulings

In 1937, the Supreme Court addressed what constituted a ripe controversy under the DJA. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth* involved a direct action by an insurer against its insured concerning whether the insured was totally and permanently disabled under various insurance policies or whether the policies had lapsed because of non-payment of premiums. The district court dismissed the action, concluding that the insurer had not "set forth a 'controversy,'" a determination upheld on appeal. 300 U.S. 227, 236 (1937). The Supreme Court reversed, ruling that a "controversy" in the constitutional sense "must be one that is appropriate for judicial determination." *Id.* at 240.

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id.* at 240–41 (citations omitted).

Under the facts in *Haworth*, there was a "definite and concrete" dispute about the "legal rights and obligations arising from the contracts of insurance." *Id.*

at 242. To demonstrate the point, the Supreme Court considered the insured's perspective: "If the insured had brought suit to recover the disability benefits currently payable under two of the policies there would have been no question that the controversy was of a justiciable nature, whether or not the amount involved would have permitted its determination in a federal court." *Id.* at 243.

Just a few years later, the Supreme Court considered whether a case or controversy existed under the DJA when an insurer sued its insured and a third party allegedly injured by the insured's employee to obtain a ruling about its obligation to defend and indemnify the insured. The injured party had sued the insured in a separate action. *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270 (1941). The court concluded that the case "plain[ly]" presented a justiciable controversy. *Id.* at 273; *see also id.* at 274 (citing *Haworth*, 300 U.S. 227 ) (finding a clear, actual controversy between the insurer and the insured, and between the insurer and third party).

So, for DJA actions about the duties to defend and to indemnify, the Supreme Court has made clear that such disputes are ripe when there is an actual, active dispute about obligations under the relevant insurance policy.

### 2.    Court of Appeals Cases

The year after *Maryland Casualty*, the former Fifth Circuit considered ripeness in a declaratory judgment action brought by an insurer against two of its

insureds and the allegedly injured third party concerning the insurer's duty to

defend and indemnify the insureds in the underlying action brought by the third

party. In *Standard Accident Insurance Company v. Meadows*, 125 F.2d 422 (5th Cir.

1942), the appellate court emphasized that such disputes are ripe:

> It has been repeatedly held in this circuit and elsewhere
> that whether an insurer is bound [under] an automobile
> insurance policy by a judgment against its insured,
> presents a controversy for declaratory judgment as
> between it, its insured and the plaintiff in a damage suit
> against its insured.

*Id.* at 423–24 (citations omitted). The court so held even though no judgment had

been entered in the underlying litigation. *Id.* at 423.

This Court has not found, and no party has identified, any en banc decision

of the Eleventh Circuit or Supreme Court overruling *Meadows*. Accordingly,

*Meadows* is binding. *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001)

(citation omitted) ("Under the well-established prior panel precedent rule of this

Circuit, the holding of the first panel to address an issue is the law of this Circuit,

thereby binding all subsequent panels unless and until the first panel's holding is

overruled by the Court sitting en banc or by the Supreme Court."); *Bonner v. City*

*of Prichard*, 661 F.2d 1206, 1209–10 (11th Cir. 1981) (adopting as binding precedent all decisions of the Fifth Circuit made before October 1, 1981).[15]

At least one subsequent reported case from the Eleventh Circuit adopts the conclusion that a declaratory judgment action brought by an insurer against its insured(s) is ripe in situations like the one presented here—even in the absence of a judgment in the underlying liability litigation. *Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1333 (11th Cir. 1989) (per curiam) (reversing the dismissal of a declaratory judgment action brought by an insurer concerning its duty to indemnify because the district court incorrectly concluded that, since a judgment had not been entered in the underlying litigation, the controversy was insufficiently concrete), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). At least one *un*reported case in this Circuit reaches the same conclusion. *Am. Ins. Co. v. Evercare Co.*, 430 F. App'x 795, 798 (11th Cir. 2011) (determining that there was a sufficient controversy where the insured had made a demand for coverage and the insurer denied it). Although not an insurance coverage case, *GTE Directories Publishing Corp. v. Trimen American, Inc.*, also supports the conclusion that the parties' dispute here is ripe. 67 F.3d 1563, 1569,

---

[15] Allstate's assertion that the former Fifth Circuit cases cited in the OTSC (*Am. Fid. & Cas. Co. v. Penn. Threshermen & Farmers' Mut. Cas. Ins.*, 280 F.2d 453 (5th Cir. 1960) and *Stonewall Ins. Co. v. Lopez*, 544 F.2d 198 (5th Cir. 1976) (per curiam)) are not binding [ECF 30, at 16] is erroneous.

1570 (11th Cir. 1995) (citation omitted) ("[T]he practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists. . . . The crucial consideration is the practical likelihood that the contingencies will occur.").

### 3. Summary

In light of the controlling case law from this Circuit and the Supreme Court (*Haworth*, *Maryland Casualty*, *Meadows*, *Holbrook*), this Court will decline to follow subsequent unreported cases from panels of the Eleventh Circuit that suggest disputes about indemnification under an insurance policy are not ripe until the insured has been held liable to a third party. *See, e.g.*, *Sullivan*, 2023 WL 1521579, at *4 ("[I]n this circuit, a declaratory judgment claim with respect to indemnification is generally not ripe until (and if) the insured has been held liable to a third party."); *Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768 (11th Cir. 2019) (per curiam) (finding no abuse of discretion in the district court's dismissal of an indemnification dispute as unripe where the underlying lawsuit had not yet been resolved). Neither *Sullivan* nor *Delacruz* discuss *Haworth*, *Maryland Casualty*, or *Meadows*. The case on which *Sullivan* and *Delacruz* do rely — *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.*, 280 F.2d 453 (5th Cir. 1960) (*Pennsylvania Threshermen*) — was decided after *Haworth*, *Maryland Casualty*, and *Meadows* and

involved a coverage dispute between a primary and excess insurer—not between the insurer and its insured or the insurer and an injured third party.[16]

Thus, while coverage disputes between two (or more) insurers may not be ripe under the controlling case law in the Eleventh Circuit, that law also makes clear that a dispute between the insurer and insured concerning the duty to indemnify is ripe when the insured faces litigation about his underlying liability. As it relates to the instant case, the Court concludes that there is a live controversy—*i.e.*, a ripe dispute—about both indemnification and the duty to defend. The Court now turns to how to value that dispute for purposes of determining whether the amount in controversy has been satisfied.

### B.    Amount in Controversy

Unlike ripeness, the amount in controversy is not a constitutional requirement. Rather it is a statutory mandate necessary to establish diversity jurisdiction. 28 U.S.C. § 1332(a) (requiring amount in controversy to exceed $75,000). As the party seeking to invoke federal diversity jurisdiction, Allstate bears the burden of showing that its claim meets the threshold jurisdictional

---

[16] Similarly, two other Fifth Circuit cases, *American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co.*, 248 F.2d 509 (5th Cir. 1957), and *Allstate Insurance Co. v. Employers Liability Assurance Corp.*, 445 F.2d 1278 (5th Cir. 1971), dealt with coverage disputes among insurers. They were not suits "between an insurer and the assured, or one who under state statutes or procedures is deemed a third party beneficiary of the contract." *Am. Fid.*, 248 F.2d at 513.

amount. *Wineberger v. RaceTrac Petro., Inc.*, 672 F. App'x 914, 916–17 (11th Cir. 2016) (citing *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)). In "actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adv. Comm'n*, 432 U.S. 333, 347 (1977) (citations omitted); *see also Federated Mut.*, 329 F.3d at 807 ("When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective."). The Court may rely on its experience and common sense to make that determination. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010).

The Court has found only three cases in this Circuit that directly address the amount in controversy in connection with a declaratory judgment action bought by an insurer against its insured. *Stonewall Ins. Co. v. Lopez* is the earliest such decision. Unfortunately for current purposes, the opinion does not fully explain the reasoning for its conclusion. 544 F.2d 198 (5th Cir. 1976) (per curiam). In *Lopez*, the underlying litigation involved a suit against the insured by the parents of a man who had been killed in a car accident. The insurer filed a declaratory judgment action against the insured and the parents concerning its duties to defend and indemnify. The district court ruled on the merits in the insurer's favor. On appeal, the appellants (the insured and the parents) argued that jurisdiction

was lacking because the amount in controversy had not been met. They asserted that the value of the case had to *exceed* $10,000 (the then-applicable threshold). Since the policy limit was *exactly* $10,000, the appellants claimed the court lacked jurisdiction. The Court of Appeals disagreed. The coverage dispute involved both indemnification (the $10,000 policy) and the duty to defend (an unidentified amount). The appellate court held that the value of the duty to defend counted toward the amount in controversy. The court did not explain the basis for its assumption that the value of indemnification was the full policy limit. But based on the facts in *Lopez*, this Court is comfortable in concluding that the Court of Appeals used the full policy limit as the value of the underlying litigation because of the severity of the damage—a death.

Similarly, in *First Mercury Ins. Co. v. Excellent Computing Distributors, Inc.*, a defendant in the underlying liability litigation argued in the declaratory judgment coverage action that the amount in controversy had not been satisfied. 648 F. App'x 861 (11th Cir. 2016) (per curiam).[17] The Court of Appeals held that the amount in controversy was "the value of the object of the litigation measured from the plaintiff's perspective." *Id.* at 864 (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000)). Accordingly, and relying on *Lopez*, the court

---

[17]   *First Mercury* is an unreported case. 648 F. App'x at 861 (noting that the case was not selected for publication).

determined that the value of the declaratory relief to the plaintiff-insurer was "the amount of *potential* liability under its policy." *Id.* at 865 (emphasis in original) (citing *Lopez*, 544 F.2d at 199). Since the plaintiff in the underlying action had suffered over $2 million in damages and the policy limit was $1 million per occurrence, the court held that the amount in controversy exceeded $75,000.

In *Sullivan* (on which the Order to Show Cause in the instant case primarily relied), the insurer denied coverage for two underlying tort actions. 2023 WL 1521579, at *1.[18] The insureds (the Sullivans) sued their insurer in state court for bad faith damages and a declaratory judgment that the insurer had a duty to defend and indemnify, but did not specify the amount of their damages. The insurer removed and the district entered judgment in its favor. *Id.*

On appeal, the Eleventh Circuit reversed, concluding that the district court should have remanded the case because the insurer had failed to show that the amount in controversy exceeded the jurisdictional requirement by a preponderance of the evidence. *Id.* at *3–*4 (citing *Michelin*, 613 F.3d at 1061). The court did not consider the policy limit—the maximum potential liability—as part of the amount in controversy. Rather, the *Sullivan* court concluded that the relevant factors were (1) the cost of defending the Sullivans in the underlying tort

---

[18]   Although a Federal Reporter citation is not yet available for *Sullivan*, the case does not indicate that it is unpublished. 2023 WL 1521579, at *1.

cases and (2) the value of the claims in those cases. *Id.* at *3–*4. Since the underlying tort claims had not reached judgment, the Court of Appeals concluded they were not ripe and thus had a value of zero. *Id.* at *4 (relying on *Delacruz*, 766 F. App'x at 770; *Allstate Ins. Co. v. Emps. Liab. Assur. Corp.*, 445 F.2d 1278, 1281 (5th Cir. 1971); *Pennsylvania Threshermen*, 280 F.2d at 461).[19]

The Eleventh Circuit's decision in *Sullivan* is problematic for the reasons discussed above—judgment in the underlying liability action is not a prerequisite of ripeness.[20] The Court also finds it impossible to square *Sullivan*'s conclusion with *Haworth*, *Maryland Casualty*, *Meadows*, and *Holbrook*, all of which are reported prior precedent and thus binding.[21]

That still leaves the question of how to determine the amount in controversy in *this* case. The Policy provides for $300,000 for family liability protection per occurrence.[22] But without appellate cases that analyze *why* the full policy limit should be counted toward the jurisdictional amount without regard to the actual

---

[19] *See supra* at 10–11 for a discussion of *Delacruz* and *Pennsylvania Threshermen*.

[20] *See supra* Section II.A.

[21] *Sullivan*'s conflict with prior precedent has been recognized by at least two other district courts in this Circuit. *See, e.g., State Auto Prop. & Cas. Ins. Co. v. Jerry Tidwell Constr., Inc.*, No. 3:22-CV-1399-MHH, 2023 WL 6348875, at *3 (N.D. Ala. Sept. 28, 2023); *Cypress Ins. Co. v. Jesse Batten Farms, LLC*, 662 F. Supp. 3d 1337, 1347 (M.D. Ga. 2023).

[22] ECF 1-1, at 7.

damages suffered by the injured parties, the Court is unwilling to conclude as a matter of law that the amount in controversy is simply the total value of the relevant insurance policy plus costs of defense.

Both the Supreme Court and the Eleventh Circuit have generally instructed that the amount in controversy is the value of the object of the litigation. *Hunt*, 432 U.S. at 347; *Federated Mut.*, 329 F.3d at 807. Here, whether the "object" of the litigation is viewed from Allstate's, Spears's, Aninder's, or Rana's perspective, the Court has no difficulty concluding that the amount in controversy exceeds $75,000.[23] The underlying plaintiff (Spears) is suing for the wrongful drowning death of her son. Aninder faces potential liability for that wrongful death of her grandson and Rana of his son. Allstate faces the potential responsibility to pay for Aninder's and Rana's defenses as well as any judgment that may ultimately be rendered against them. No matter the particular point of view used in assessing the amount in controversy, the Court's experience and common sense dictate that the jurisdictional amount is met. Allstate has satisfied the Order to Show Cause.

---

[23] The relevant perspective—that of the plaintiff-insurer in the declaratory judgment action or the injured plaintiff in the underlying litigation—is not entirely clear from the case law. *Compare First Mercury*, 648 F. App'x at 865 (focusing on the value of the declaratory relief to the plaintiff-insurer as the amount of potential liability under the policy) *with Sullivan*, 2023 WL 1521579, at *3–*4 (focusing on the value to the plaintiff in the underlying litigation). Given the facts of this case, the value of the dispute is clearly in excess of the jurisdictional limit without regard to which party's perspective is employed.

C.      **The Court's Discretion**

In addition to the constitutional requirement for ripeness, the Court should also assess whether there are any prudential reasons to decline to exercise jurisdiction. Such considerations arise "from problems of prematurity and abstractness that may present insurmountable obstacles to the exercise of the court's jurisdiction, even though jurisdiction is technically present." *Johnson*, 730 F.2d at 648 (citations omitted); *see also Digital Props.*, 121 F.3d at 591 n.4 (dismissing, "as a matter of judicial restraint," a facial challenge to the constitutionality of a city code for lack of ripeness).[24]

Further, in declaratory judgment actions, a court may decline to hear the case when there is a related matter in another court that will resolve the parties' dispute. *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982) (citations omitted). The Eleventh Circuit has set out various factors district courts should consider when deciding whether to decline the exercise of jurisdiction over a DJA action in light of a parallel state-court action. *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005) (per curiam) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)) ("[I]t would be uneconomical as well as

---

[24] The Eleventh Circuit has, however, noted that this doctrine may be in doubt. *Progressive Mountain Ins. Co. v. Middlebrooks*, 805 F. App'x 731, 736 (11th Cir. 2020) (discussing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)). The Court would reach the same outcome whether exercising discretion or not.

vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.").

Here, the Court finds no prudential reasons—either under ripeness or the DJA—to decline the exercise of jurisdiction. The question of Allstate's duty to defend is live and affects Aninder and Rana as long as the Underlying Litigation is still pending. And, according to the state court's docket, it is. While Allstate's duty to indemnify might never arise, providing the parties with certainty about their obligations may help resolve the Underlying Litigation more quickly and efficiently. *See, e.g.*, *First Mercury*, 648 F. App'x at 866–67 (indicating a court should, when making a discretionary decision under the DJA, consider the benefits that an insurance coverage determination may provide by clarifying the legal relationships at issue).

Finally, the issues presented in this case are discreet and do not depend on the issues in or outcome of the Underlying Litigation. Allstate's claims depend only on the meaning of the Policy and the application of its terms to Spears, Aninder, and Rana. That application does not appear to depend in any way on their actions before or surrounding Ben's death, or with who may be liable—which is the central dispute in the Underlying Litigation.

Having established that the Court can and will hear this dispute, it turns to Allstate's motion to amend.

## III. Leave to Amend

Allstate seeks leave to amend the scheduling order for the purpose of adding Rana as a defendant.[25] When a motion for leave to amend a pleading is filed after the deadline set by a scheduling order, the movant is required to demonstrate good cause under Fed. R. Civ. P. 16 before the Court considers whether the amendment is proper.[26] *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998); *Bowers v. Am. Heart Ass'n., Inc.*, 513 F. Supp. 2d 1364, 1367 (N.D. Ga. 2007); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The ultimate decision of whether to grant such leave is, however, committed to the Court's discretion. *S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1240 (11th Cir. 2009); *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 406 (11th Cir. 1989).

---

[25]  ECF 24.

[26]  Although Allstate moves under Rule 15, it also argues that adding Rana as a party would be proper under Rule 21. ECF 24, at 10. Either way, the standard the Court should apply is the same. *Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, 148 F.3d 1231, 1255 (11th Cir. 1998) (indicating that the standard for ruling on the motion to file an amended complaint to add a party was the same under Fed. R. Civ. P. 15(a) or 21).

A. **Good Cause**

Here, amendments to the pleadings were due 30 days after the parties filed the joint preliminary report.[27] That report was filed on February 2, 2023.[28] Allstate did not seek leave to add Rana as a party until long thereafter.[29] Accordingly, Allstate must establish good cause to allow the amendment under Rule 16.

When Spears first raised the wrongful death claim, she did so only against Aninder.[30] In refiling the claim on May 24, 2023, Spears added Rana as a defendant.[31] By then, Allstate had already initiated this suit. Allstate asserts that it did not receive notice of Spears's refiled claims until June 27, 2023.[32] Neither Spears nor Aninder dispute that contention.[33] The cause of the delayed notice is not clear from the record, but it does not appear to have been attributable to Allstate itself. Allstate filed its motion for leave on July 14—just 17 days after it received notice of the refiled claims. Since Spears did not assert a claim against

---

[27] ECF 10, at 7 ("Amendments to the pleadings submitted LATER THAN THIRTY DAYS after the Joint Preliminary Report and Discovery Plan is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.").

[28] ECF 10.

[29] ECF 24.

[30] ECF 24-1, at 2.

[31] ECF 24-2.

[32] ECF 24-3, ¶ 3.

[33] ECF 33. Spears did not respond to Allstate's motion to amend.

Rana until she refiled her suit, Allstate argues that good cause exists to permit it to add Rana to *this* suit now.

Despite the late stage of this litigation—discovery is closed and Allstate has moved for summary judgment—the Court concludes that Allstate has shown good cause. If the Court does not add Rana as a defendant, Allstate would have to proceed against him (if at all) in a separate action. That would create the potential for inconsistent judgments as to Spears and Aninder on the one hand and Rana on the other—despite the fact that Aninder and Rana are nearly identically situated from Allstate's perspective. Nor does the Court seek to render a judgment that, in every practical way, would fit Rana's circumstances without Rana first having the opportunity to participate in this litigation. Given that Rana is also an insured under the Policy and thus similarly situated to the current defendants, adding Rana as a party is appropriate under Rule 15 or 21.

### B.      Delay

The Court is nonetheless troubled by Allstate's conscious decision to wait to seek leave to amend until *after* it moved for summary judgment—despite knowing that Rana was not a party to this action but *was* a defendant in the Underlying Litigation. At the very least, Allstate had long had knowledge that Rana was a possible defendant in that case. Not only had the deadline for amending the pleadings in *this* case passed before Allstate sought leave—the deadlines for the

close of discovery and filing dispositive motions had also passed by the time Allstate sought to add Rana. Why Allstate didn't simply ask for an extension of time in light of these circumstances is unclear and has created procedural problems that could have been avoided. Regardless, the Court does not believe it would be fair to Allstate, the current or proposed defendants, or in the interests of justice, to deny the relief Allstate seeks.

### C.   Lack of Opposition

Spears does not oppose Allstate's motion. While Aninder objects, she does not argue that Allstate failed to show good cause or satisfy Rule 15. Rather, she argues that Allstate is breaching its duty to defend by pursuing this suit in the first place.[34] Whether that is true is the ultimate subject of this litigation. But it has no bearing on whether the amendment to the complaint should be permitted. The Court concludes that Allstate has made a sufficient showing to add Rana as a defendant and to amend the scheduling order. Because Allstate will be permitted to file an amended complaint, service must be effected on Rana, and discovery must be reopened, Allstate's summary judgment motion will be denied without prejudice, with leave to renew under the amended scheduling order. Aninder's motion for leave to file a surreply to the current summary judgment motion is denied as moot.

---

[34]   ECF 33.

### IV.    Conclusion

Allstate's motion to amend the scheduling order and add party [ECF 24] is **GRANTED**. Within five days of this Order, Allstate shall file an amended complaint adding Rana Jawanda as a defendant. Within 30 days thereafter, Allstate shall effect service of process on Rana Jawanda. Within five days after completing such service, Allstate shall file proof of service with the Court. Discovery shall reopen upon filing of such proof of service and continue for 60 days. Dispositive motions will be due 30 days after the close of the reopened discovery period.

Allstate's motion for summary judgment [ECF 22] is **DENIED without prejudice**. Allstate may renew its motion by the dispositive motion deadline as referenced above. Aninder Jawanda's motion for leave to file a surreply [ECF 34] is **DENIED as moot**.

**SO ORDERED** this 31st day of March, 2024.

Steven D. Grimberg
United States District Judge